UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA ROACH,<br><br>          Plaintiff,<br>     v.<br><br>KAISER PERMANENTE LONG TERM DISABILITY PLAN;<br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>          Defendants. | Case No. **CV 08-4746-JFW (AGRx)**<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

This action came on for court trial on April 14, 2009. Sara Smith Ray of Altman & Ray LLP appeared for Plaintiff Patricia Roach ("Plaintiff"). Rebecca A. Hull appeared for Defendants Kaiser Permanente Long Term Disability Plan and Metropolitan Life Insurance Company (collectively "Defendants").

After considering the evidence, briefs, and argument of counsel, the Court makes the following findings of fact and conclusions of law:

/ / /

/ / /

**Findings Of Fact**[1]

**I.   Introduction**

This is an action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") for recovery of long term disability benefits under a group long term disability plan issued by Metropolitan Life Insurance Company("MetLife") to Kaiser Foundation Health Plan, Inc. for the benefit of employees of the Southern California Permanente Medical Group("SCPMG").  On July 18, 2008, Plaintiff filed a Complaint seeking review of Defendants' denial of Plaintiff's long term disability ("LTD") benefits under the Kaiser Permanente Long Term Disability Plan, insured by MetLife (the "Plan").

**II.  Facts**

Plaintiff commenced her employment with SCPMG in 1975. As a benefit of her employment with SCPMG, Plaintiff was eligible for long term disability insurance under the Plan issued by MetLife.  At all relevant times, Plaintiff was a participant in the Plan.  Pursuant to the terms of the Plan, MetLife is the claims administrator for claims made under the Plan and is also a Plan fiduciary.

   A.   The Plan

---

[1] The Court has elected to issue its decision in narrative form because a narrative format more fully explains the reasons supporting the Court's conclusions.  Any finding of fact that constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is hereby adopted as a finding of fact.

2

After a 180 day Elimination Period (during which no benefits are paid), the Plan provides long term disability ("LTD") benefits if the participant became disabled while covered under the Plan. (AR 0024)

The Plan defines "disabled" or "disability" as follows:

> "Disabled" or "Disability" means that, due to sickness, pregnancy or accidental injury, you are receiving Appropriate Care and Treatment from a Doctor on a continuing basis; and
>
> 1. during your Elimination Period and the next 24 month period, you are unable to earn more than 80% of your Predisability Earnings or Indexed Predisability Earnings at your Own Occupation for any employer in your Local Economy; or
>
> 2. after the 24 month period, you are unable to earn more than 80% of your Indexed Predisability Earnings from any employer in your Local Economy at any gainful occupation for which you are reasonably qualified taking into account your training, education, experience and Predisability Earnings.

(AR 0025) "Own occupation" is defined as:

> the activity that you regularly perform, as determined by the Employer, and that serves as your source of income. . . .Own occupation is not limited to the specific position you held with your Employer. It may be a similar activity that could be performed with your Employer or any other Employer.

(AR 0025). If the participant is disabled "due to a Mental or Nervous Disorder or Disease," the Plan limits coverage to 36 months of disability, including the 180 day Elimination Period. (AR 0030) In effect, after accounting for the Elimination Period during which no benefits are payable, a participant who is disabled due to a Mental or Nervous Disorder or Disease is entitled to only 30 months of disability payments. "Mental or Nervous Disorder or Disease"

3

means "a medical condition of sufficient severity to meet the diagnostic criteria established in the current Diagnostic And Statistical Manual of Mental Disorders. You must be receiving Appropriate Care and Treatment for your condition by a mental health Doctor." (AR 0030)

    B.   <u>Plaintiff's Occupation and her Disability</u>

Plaintiff began her employment with SCPMG on October 13, 1975, and held a number of positions during her approximately 30 years of employment with SCPMG. She began her most recent position as a Project Manager/Ambulatory Care Registered Nurse Manager in 2002. (AR 0098; 0203-206) Her responsibilities included overseeing the remodeling and building of a new facility, which required her to meet with architects and facility administrators regarding design. (AR 0259) She typically worked 12 to 14 hour days. (AR 0259) According to Plaintiff's supervisor, her position required overtime on a routine basis, and necessitated "frequent" stressful situations (34 to 66 percent of the time) and "continual" interpersonal relations with others (67 to 100 percent of the time). (AR 0108) Her position was not capable of being modified by her employer. (AR 0109)

In September 2004, Plaintiff awoke with intense chest pains that required her to be hospitalized from September 10 to 15, 2004. (AR 0129) After Plaintiff's hospital stay, she remained at home for two days, and then returned to work on September 20, 2004. (AR 0129) However, on November 4, 2004, Plaintiff's primary care physician, Sue Park, M.D. recommended that Plaintiff see a psychologist and that she

4

1  take time off from work due to significant stress.  (AR 0195;
2  AR 0280) Plaintiff has not worked since then. (AR 0129)
3      On December 1, 2004, Dr. Park submitted a "Documentation
4  of Medical Impairment (DMI)" form to Plaintiff's employer,
5  stating that Plaintiff was completely unable to work for 60
6  days due to "anxiety/stress/phobic disorders." (AR 0275)
7  Plaintiff's medical leave was thereafter extended by her
8  physicians multiple times. (AR 0153, 0171, 0182, 0201, 0227,
9  0245)
10     On February 2, 2005, Plaintiff was examined by Jeffrey
11 Hirsch, M.D., an internist, in connection with Plaintiff's
12 application for workers' compensation.  (AR 0258-266) He
13 determined that Plaintiff suffered from occupational stress,
14 multiple stress-driven physical complaints, temporomandibular
15 joint syndrome ("TMJ") with bruxism, and musculoskeletal
16 pain. (AR 0258; 0263)  He opined that "[i]t is medically
17 reasonably probable that Ms. Roach's underlying tendency
18 toward hypertension has been 'lit up' due to her exposure to
19 stress." (AR 0264)  Dr. Hirsch concluded that Plaintiff was
20 "temporarily totally disabled" and that the cause of her
21 medical problems required further information, including
22 review of medical records and referral to specialists.  (AR
23 0264)
24     Dr. Hirsch and Dr. Park referred Plaintiff to several
25 specialists to determine the cause of her complaints and
26 symptoms.  Although these specialists for the most part found
27 no significant physical abnormalities, there was evidence
28 / / /

that Plaintiff suffered from a psychological condition. (AR 0251, 0249, 0156)

On March 11, 2005, Plaintiff was examined by Richard M. Hyman, M.D., an internist and cardiologist in connection with her workers' compensation claim. (AR 0211-212) After conducting a physical examination and reviewing the results of Plaintiff's lab tests, Dr. Hyman diagnosed Plaintiff with hypertension. (AR 0212) Although Plaintiff "tend[ed] to suggest" that every medical problem she experienced was stress or work related, Dr. Hyman noted that "ultimately in order to medically come to probable conclusions from an internal medicine standpoint, it will have to be identified whether or not [Plaintiff] has had a true history of perceived stress." (AR 0212) He concluded that "if it is determined that she meets psychiatric criteria for Psychological Factors Affecting Physical Condition[,] the only possible work restriction would be of a stress-related nature but . . . this should be based on psychological criteria and not because she has a stress affected internal medicine condition." (AR 0212)

In early May 2005, Dr. Hirsch recommended that Plaintiff undergo a complete psychological evaluation and treatment for her emotional symptoms. (AR 0202, 0213) In response to Dr. Hirsch's request, on May 25, 2005, David Lopata, Ph.D., a psychologist, examined and assessed Plaintiff for a period of six hours. (AR 0202) For three of these hours, Dr. Lopata conducted a face-to-face clinical interview and mental status examination of Plaintiff. (AR 0202) Plaintiff spent the

6

remaining three hours self-administering a number of psychometric tests, including the Shipley Institute of Living Scale, Beck's Depression Inventory-II, Beck's Hopelessness Scale, the State-Trait Anxiety Inventory, the Wahler Physical Symptoms Inventory, and the Minnesota Multiphasic Personality Inventory-2. (AR 0202) After evaluating the test results and reviewing Plaintiff's medical reports, Dr. Lopata diagnosed Plaintiff with Depressive Disorder Not Otherwise Specified with Anxious Features. (AR 0219) He opined that "more than 50%" of the causation of Plaintiff's Depressive Disorder was due to her employment with SCPMG, based on the "heavy workload, deadlines, time pressures, long working hours and a significant degree of responsibility for staffing patterns, patient care, and building projects." (AR 0220) Dr. Lopata concluded that Plaintiff should be considered "temporarily totally disabled on a psychological premise[]," and stated that "it is difficult to know if and when [Plaintiff] can return to her old employment setting . . . [H]owever, from a prophylactic point of view if she does so, she would have to have a setting where there is less than the average amount of stress." (AR 0221)

On June 20, 2005, after reviewing Dr. Lopata's initial psychological report, Dr. Hirsch adopted Dr. Lopata's findings as his own. (AR 0193-200)

Plaintiff continued to see Dr. Lopata for treatment of her psychological condition. On July 14, 2005, after several more sessions with Plaintiff, Dr. Lopata completed a periodic Treating Physician's Progress Report, noting that Plaintiff

7

described herself as feeling "trapped at work" because of the long hours and extreme workload, she had difficulty sleeping, and suffered from headaches, lower back spasms, persistent tiredness and fatigue, and periodic gastrointestinal distress. (AR 0188) Although Dr. Lopata encouraged the use of antidepressants, Plaintiff was resistant to taking anti-depressants and fairly committed to dealing with her depression and anxiety on her own. (AR 0188) Dr. Lopata concluded that Plaintiff "remain[ed] totally permanently disabled on a psychological premise." (AR 0189)

On September 22, 2005, Dr. Lopata completed another Treating Physician's Progress Report, again concluding that Plaintiff "remain[ed] totally permanently disabled on a psychological premise." (AR 0179-180) He noted that Plaintiff continued to "be rather sullen, somber, and depressed," and that Plaintiff described feelings of being tired, worn out, and easily fatigued. (AR 0179) Plaintiff had "little trust or positive affect concerning her previous place of employment," and after seeing some people from work, she felt uncomfortable and ill at ease. (AR 0179)

On November 18, 2005, Dr. Lopata completed another Treating Physician's Progress Report, noting that Plaintiff continued to report multiple symptoms, such as persistent headaches, lower back pain, leg spasms, high blood pressure, fatigue, and periodic bouts of tearfulness. (AR 0116-117) While Dr. Lopata reported that Plaintiff was "thinking less frequently of her previous employer although such thoughts continue[d] to cause her pain and hurt" and that she was

"feeling somewhat less depressed and overwhelmed," he opined that Plaintiff "remain[ed] temporarily totally disabled on a psychological premise." (AR 0116-117)

Meanwhile, throughout 2005, Dr. Hirsch also advised Plaintiff to remain off work, and in November 2005, opined that Plaintiff was temporarily totally disabled. (AR 0182, 0171, 0153, 0139, 0106)

C.  <u>MetLife's Denial of Plaintiff's Benefits</u>

On November 4, 2005, Plaintiff submitted her claim for LTD benefits, stating that she was unable to work due to a back injury, chronic pain, stress, and uncontrolled hypertension. (AR 0129)

Because of Plaintiff's "multiple diagnoses and the large amount of medical documentation submitted," MetLife requested that Robert D. Petrie M.D. of Elite Physicians, Ltd., a physician who is Board Certified in preventative medicine, occupational medicine, and family practice, review Plaintiff's file. (AR 0084) On February 16, 2006, Dr. Petrie reviewed Plaintiff's file, including Dr. Hirsch's records prepared between February and December 2005, and Dr. Lopata's records prepared between May and November 2005. (AR 0094) Based upon his review, Dr. Petrie concluded that Plaintiff's primary diagnoses were depression and anxiety, and determined that "Ms. Roach's reported job dissatisfaction and perception of work-related stress have resulted in her absence from the workplace, but there is no demonstrated impairment which actually prevents the performance of her job duties. . . . Ms. Roach could perform her own occupation with a different

employer or in a different location or with a different supervisor." (A0090-A0096)

By letter dated February 22, 2006, MetLife denied Plaintiff's LTD claim, largely repeating Dr. Petrie's conclusions: "Your reported job dissatisfaction and perception of work-related stress have resulted in your absence from the workplace.  There is; however, no demonstrated impairment which actually prevents the performance of your job duties.  You are capable of performing your own occupation with a different employer, or with a different supervisor.  Your complaints of depression are only related to the specifics of the job environment in which you were working."  (AR 0084-86) Accordingly, MetLife concluded that Plaintiff did not meet the definition of "disabled" under the Plan. (AR 085) MetLife advised Plaintiff of her appeal rights under the Plan.  (AR 0085)

D. <u>Plaintiff's Appeal</u>

On June 27, 2006, Plaintiff's counsel sent MetLife a letter, entitled "**APPEAL OF DENIAL OF LONG TERM DISABILITY BENEFITS,**" stating in relevant part:

> Ms. Roach hereby seeks review of MetLife's February 22, 2006, denial of long term disability benefits under the above-referenced policy. However, before Ms. Roach could adequately present her case and obtain a full and fair review, she must have an opportunity to review the documents relied on by MetLife in denying her claim. . . .
>
> Once I receive the above-described documents and information, I will submit written comments, arguments and/or medical documentation on behalf of Ms. Roach.

(AR 0076-78)

In July 2006, in response to her request for documents, MetLife provided Plaintiff's counsel with the complete claim file. (AR 0080)

After receiving the claim file, Plaintiff's counsel did not submit written comments, arguments, or medical documentation to MetLife and did not communicate with MetLife until May 4, 2007. In a letter on that date, Plaintiff's counsel inquired about the status of Plaintiff's appeal, stating:

> I am still awaiting a reply to our appeal in this matter. As you are aware Ms. Roach is receiving SSDI benefits due to the subject disability. Dr. Lopata opines that she is disabled from physical and psychological limitations and restrictions. Please respond.

(AR 0073) In response, on May 15, 2007, MetLife sent a letter to Plaintiff's counsel, stating that "[t]o date, we have not received a written appeal request for Ms. Roach's Long Term Disability Claim" and pointing out that in Plaintiff's counsel's previous letter, she had stated that she would submit written comments, arguments and/or medical documentation after receiving documents from MetLife. (AR 0074)

To date, MetLife has failed to conduct an appellate review.

## Conclusions Of Law

**I.  Jurisdiction And Venue**

This action involves a claim for long term disability benefits under an employee welfare benefit plan regulated by ERISA. As such, the Court has original jurisdiction over

11

this matter under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). *See, e.g., Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).  Venue in the United States District Court for the Central District of California is invoked pursuant to 29 U.S.C. § 1132(e)(2).

The parties do not dispute the facts requisite to federal jurisdiction and venue.

**II.  Standard Of Review**

A "denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Generally, where the plan grants such discretionary authority to the administrator or fiduciary, the Court reviews the denial of benefits under the plan for an abuse of discretion.  *Id.* However, even where a plan grants such discretion to the administrator or fiduciary, the Court will review the denial of benefits de novo when the administrator or fiduciary fails to exercise that discretion or engages in "wholesale and flagrant violations" of the procedural requirements of ERISA. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 971-72 (9th Cir. 2006)

In this case, both parties agree that the Plan grants discretion to MetLife as a Plan fiduciary. Plaintiff however argues that the Court should conduct a de novo review of MetLife's denial of benefits, because MetLife failed to

12

exercise its discretion, by failing to respond or issue a decision on her appeal. Defendants, in response, contend that Plaintiff never perfected her appeal.

The Court finds that Plaintiff exercised her right to appeal, and perfected her appeal of MetLife's denial of benefits. The June 27, 2006 letter from Plaintiff's counsel was entitled "**APPEAL OF DENIAL OF LONG TERM DISABILITY BENEFITS.**" (AR 0076) The first sentence of the second paragraph of the letter unambiguously stated: "Ms. Roach hereby seeks review of MetLife's February 22, 2006, denial of long term disability benefits . . . ." (AR 0076).

Nonetheless, Defendants argue that Plaintiff failed to perfect her appeal because "the letter specifically instructed MetLife not to commence its appeal review, as plaintiff had requested further information, and said that she would submit 'written comments, arguments and/or medical documentation' at a later date." (Defendants' Trial Brief, p. 12). However, the Court finds, contrary to Defendants' argument, that the letter did not specifically instruct MetLife to wait to commence its appeal review. Although Plaintiff did in fact request further information and state that she would submit written comments, arguments and/or medical documentation at a later date, the Court finds that the letter, considered in its entirety, provided MetLife with notice that Plaintiff disagreed with and was appealing MetLife's decision to deny her LTD benefits. *See Kellogg v. Metropolitan Life Ins. Co.*, 549 F.3d 818, 826 (10th Cir. 2008) (finding that MetLife was on notice that claimant was

appealing MetLife's decision to deny benefits where counsel's letter clearly stated that the claimant was appealing the decision to deny payment of benefits and outlined the general basis of claimant's appeal even though counsel also requested the entire claim file and requested 60 days to present additional information to MetLife); *Eppler v. Hartford Life and Accident Ins. Co.*, 2008 WL 361137, at *10 (N.D. Cal. Feb. 11, 2008) (finding that letter constituted an appeal where the letter stated "Mr. Eppler wishes to appeal The Hartford's decision.  In order to permit him to do so, and to respond adequately to The Hartford's decision, we respectfully request that you provide to us the following documents and information. . . .").

   Moreover, pursuant to the Plan, Plaintiff was not required to submit written comments, arguments, or additional documentation to perfect her appeal.  The Plan provides in relevant part:

> In the event a claim has been denied in whole or in part, you or, if applicable, your beneficiary can request a review of your claim by Metropolitan.  This request for review should be sent to Group Insurance Claims Review at the address of Metropolitan's office which processed the claim within 60 days after you or, if applicable, your beneficiary received notice of denial of the claim.  When requesting a review, *please* state the reasons you or, if applicable, your beneficiary believe the claim was improperly denied and submit any data, questions or comments you or, if applicable, your beneficiary deems *appropriate*.
>
> Metropolitan will re-evaluate *all* the information and you or, if applicable, your beneficiary will be informed of the decision in a timely manner.

(AR 0044)(emphasis added).  The Plan's language does not make the submission of comments, arguments, or additional

14

documentation mandatory before the Plan must consider an appeal.

As a result, after Plaintiff invoked her right to appeal under the Plan, MetLife had a responsibility under ERISA to determine Plaintiff's appeal, even though it never received any additional comments, arguments, or documentation from Plaintiff. *See* 29 C.F.R. 2560.503-1(i)(3)(ii) (requiring a plan administrator to issue a decision on an appeal within 45 days after receipt of the claimant's request for review); 29 C.F.R. 2560.503-1(i)(4)("For purposes of paragraph (i) of this section, the period of time within which a benefit determination on review is required to be made shall begin at the time an appeal is filed in accordance with the reasonable procedures of a plan, without regard to whether all the information necessary to make a benefit determination on review accompanies the filing."); *Eppler v. Hartford Life and Accident Ins. Co.*, 2008 WL 361137, at *11 (N.D. Cal. Feb. 11, 2008) (holding that "plaintiff's October 3 letter was enough to trigger Hartford's duty to give the claim file a second, independent review, even if based on only the same record used by the first reviewer" and even though claimant's letter "implied that a more formal appeal would be forthcoming"); *Kellogg v. Metropolitan Life Ins. Co.*, 549 F.3d 818, 827 (10th Cir. 2008) (finding that MetLife had a responsibility under ERISA to ultimately issue a decision on claimant's appeal, where letter provided MetLife with notice that claimant was appealing MetLife's decision to deny her benefits).

Instead, MetLife failed to take any action on Plaintiff's appeal, and thus failed to exercise its discretionary authority under the Plan. Accordingly, the Court finds that de novo review is the appropriate standard of review. *See, e.g. Jebian v. Hewlett-Packard Company Employee Benefits Organization Income Protection Plan,* 349 F.3d 1098, 1106 (9th Cir. 2002) (holding that an administrator failed to exercise its discretion when it did not make a benefits decision within the 60 days specified by the terms of the plan and the applicable regulation, so that the ultimate decision rendered was "undeserving of deference"); *Abatie*, 458 F.3d at 972 (stating that "[i]n general, we review de novo a claim for benefits, when an administrator fails to exercise discretion" and citing *Jebian*'s holding in support); *Kellogg*, 549 F.3d at 828 (applying de novo review where MetLife ignored claimant's request for documentation and for a review of MetLife's decision to deny benefits); *Kowalski v. Farella, Braun & Martel, LLP*, 2007 WL 2123324, at *2 (N.D. Cal. July 23, 2007) (reviewing defendants' termination of plaintiff's disability benefits de novo where defendants never ruled on plaintiff's appeal); *Vaught v. Scottsdale Healthcare Corporation Health Plan*, 2009 WL 649806, at *2 (D. Ariz. Mar. 10, 2009) (finding de novo review appropriate where Plan failed to exercise its discretionary authority by failing to act on claimant's appeal).

Because Plaintiff is entitled to de novo review, the Court gives no deference at all to MetLife's decision to deny

/ / /

Plaintiff LTD benefits.  *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 n.2 (9th Cir. 1999).

**III. Discussion**

Based on its review of the administrative record, the Court concludes that MetLife incorrectly denied Plaintiff LTD benefits under the terms of the Plan.

Under the terms of the Plan, Plaintiff is "disabled" if during the Elimination Period and the next 24 month period, she is unable to earn more than 80% of her Predisability Earnings or Indexed Predisability Earnings at her Own Occupation for any employer in her Local Economy. Plaintiff's Own Occupation means the activity that she regularly performs, as determined by *her employer*, and that serves as her source of income.

In this case, her employer, SCPMG, determined that her position as Project Manager/Ambulatory Care Registered Nurse Manager required overtime on a routine basis, and necessitated "frequent" stressful situations (34 to 66 percent of the time) and "continual" interpersonal relations with others (67 to 100 percent of the time). (AR 0108) Furthermore, her employer determined that her position was not capable of being modified.  (AR 0109)  Although Plaintiff's "own occupation" under the terms of the Plan is not limited to the specific position she held with her employer, the administrative record is devoid of any evidence demonstrating that a similar position with her employer or any other employer would have different requirements or duties.

17

Based upon his diagnosis of Plaintiff with Depressive Disorder Not Otherwise Specified with Anxious Features and the evidence that Plaintiff's occupation required long hours and frequent stressful situations, Dr. Lopata concluded that Plaintiff was "temporarily totally disabled on a psychological premise[]." (AR 0221) He opined that "it is difficult to know if and when [Plaintiff] can return to her old employment setting . . . [F]rom a prophylactic point of view if she does so, she would have to have a setting where there is less than the average amount of stress." (AR 0221) Given that Plaintiff's own occupation required frequent stressful situations and was not capable of being modified, the Court concludes, based on Dr. Lopata's opinion which was amply supported by Plaintiff's medical records, that Plaintiff was unable to perform her own occupation and was disabled under the Plan.

There is scant evidence to contradict Dr. Lopata's opinion. Indeed, consistent with Dr. Lopata's opinion, both of Plaintiff's primary treating physicians, Dr. Hirsch and Dr. Park, instructed Plaintiff not to work due to her depression, anxiety, or stress. The only conflicting opinion is that of Dr. Petrie, who is not a psychologist, and who did not independently examine Plaintiff. Although he opined that "Ms. Roach could perform her own occupation with a different employer or in a different location or a different supervisor," Dr. Petrie neither analyzed nor made any reference to the fact that Plaintiff's position or occupation required frequent stressful situations or required overtime

on a routine basis. He relied solely on the physical, instead of the psychological, aspects of Plaintiff's occupation, and assumed, without any evidentiary support, that Plaintiff could perform her occupation with a different employer, in a different location, or with a different supervisor.

Accordingly, the Court finds by a preponderance of the evidence that Plaintiff was disabled under the "own occupation" definition of disability, and that MetLife improperly denied benefits.

**IV. Conclusion**

For all of the foregoing reasons, the Court finds that MetLife incorrectly denied Plaintiff LTD benefits under the "own occupation" definition of disability under the Plan. Plaintiff is entitled to disability benefits through February 25, 2006, the last day that the administrative record evidences that Plaintiff was disabled. (AR 0106)  The Court does not consider whether Plaintiff is entitled to any benefits beyond February 25, 2006, or whether Plaintiff is entitled to benefits under the "any occupation" definition of disability under the Plan.  The Court remands this action to MetLife for purposes of a calculation of benefits in accordance with these Findings of Fact and Conclusions of Law ("FFCL"), and for determination of whether the Plaintiff is entitled to LTD benefits beyond February 25, 2006.

/ / /

/ / /

/ / /

Counsel shall meet and confer and prepare a proposed Judgement consistent with these FFCL. The proposed Judgment shall be lodged with the Court on or before May 26, 2009.

Dated: May 12, 2009

JOHN F. WALTER
UNITED STATES DISTRICT JUDGE